# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 4, 2011

## STATE OF TENNESSEE v. DONTAYVIS BROWN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-00732      John T. Fowlkes, Jr., Judge**

---

**No. W2010-02638-CCA-R3-CD  - Filed December 29, 2011**

---

The defendant, Dontayvis Brown, was convicted by a Shelby County jury of one count of aggravated robbery and two counts of aggravated assault and was sentenced by the trial court to concurrent terms of ten years for each conviction.  He raises the following three issues on appeal:  (1) whether the evidence was sufficient to sustain his convictions; (2) whether the trial court erred in ruling that the State could impeach his testimony with his prior conviction for facilitation of aggravated robbery; and (3) whether the trial court erred in refusing to charge certain lesser-included offenses.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Joseph A. McClusky (on appeal) and Blake Ballin (at trial), Memphis, Tennessee, for the appellant, Dontayvis Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Nicole Germain, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

According to the State's proof at trial, at approximately 10:00 p.m. on July 30, 2009, Kathryn Lester was outside her home in the Orange Mound neighborhood of Memphis visiting with Tristan Fifer and Javan Smith, who had pulled up in Fifer's vehicle, when the

trio was accosted by three armed men, including one who was later identified as the defendant. Lester attempted to flee into her house but was chased and stopped by one of the defendant's companions, who held her at gunpoint on the porch of the home. In the meantime, the defendant and his second companion demanded money from Fifer and Smith and forced them to remove their pants and lie down on the ground. The defendant took Fifer's car keys, cell phone, money, pants, and shoes before he and his companions fled the scene. The defendant was subsequently indicted for the aggravated robbery of Fifer and the aggravated assaults of Smith and Lester.

The State's first witness at trial was Ethel Mousa, Lester's across-the-street neighbor, who testified that sometime after 9:30 p.m. on July 30, 2009, she walked to the corner store, which was visible from her house. As she approached, her suspicions were aroused by four men who were sitting in a red Chevrolet Suburban that was stopped in the store's parking lot with its engine running. Mousa said that the men were still there when she exited the store and that she took a good look at the driver as she walked past because she wanted to be able to recognize him "if anything should go down."

Mousa testified that she walked home, went inside, and almost immediately left the house again with her boyfriend. As she did so, she heard Lester yelling, looked toward her house, and saw three armed men – two with handguns and one with a shotgun – running down the sidewalk from Lester's home toward the corner store. She also saw Lester and two additional men. One of those two was getting up from the ground and pulling his pants on, while the other was running in the opposite direction from the armed men.

Mousa testified that on August 1, 2009, she identified the defendant as the driver of the red Suburban by picking his photograph out of a photographic lineup she was shown by the police. Mousa also made a positive courtroom identification of the defendant as the driver of the Suburban. She acknowledged on cross-examination that she did not see the faces of any of the three armed men who ran from Lester's home.

Kathryn Lester testified that on the night of the robbery, Tristan Fifer, the brother of her child's father, pulled up to her home with his friend, Javan Smith. She said she was outside talking with Fifer at his vehicle when three men wearing hoods walked past and knocked on her next-door neighbor's door. Nobody answered, and the men then walked down the street and stood for a while before starting back toward Fifer's vehicle. Lester, who was suspicious of the men because of the late hour and the fact that they were all wearing hoods that obscured her view of their faces, asked Fifer not to leave until she was safely back inside. Before she could get there, however, the three men were upon them, ordering them to "get down." She reacted by running toward her home, but one of the men gave chase, catching up to her on the front porch. At that point, Lester knelt down while the

man pressed a handgun against her head. She said the man holding a gun on her fled with his companions after one of the other two men said, "Let's go." She never saw any of the men's faces.

Lester testified that when the gunmen left, Fifer jumped over the bushes toward the neighbor's house while Smith, who had been forced to strip to his boxer shorts, pulled up his pants and called the police. No property was taken from her, but she was so terrified during the incident that she urinated on herself. Lester made a courtroom identification of the defendant as a good friend of her child's father and said that he had stayed in her home with her and her family for about a week before the incident occurred.

Tristan Fifer testified that on the night of the robbery, he drove with Smith to Lester's home to visit his brother, who was living with Lester at that time. Instead, he ended up briefly chatting with Lester, who came outside to let him know that his brother was not home. As he talked with her, he noticed a red Suburban driving past. Fifer said he was about to depart when three men walked down the street and rang the doorbell of one of Lester's neighbors. He stated that Lester asked him to wait until she was inside before he pulled off but that the men suddenly snuck up on them, with one of their number pointing a handgun at him and ordering him to turn off his vehicle and give him the keys. He complied, and the man then ordered him out of the vehicle and demanded his money.

Fifer testified that he told the man his money was in his pants and, when the man asked if he had any shoes, pointed to his Air Jordans, which were on the floorboard in the backseat of his vehicle. He said the man picked up the shoes, forced him to remove his pants, grabbed the pants, and then made him lie facedown on the ground, telling him that if he looked up, he would shoot him in the head. He said it was apparent to him that the man, who had a scarf wrapped around his face, was trying to prevent him from seeing his face. Nonetheless, he immediately recognized him by his voice as the defendant. Fifer expressed absolute certainty in his identification, explaining that the defendant was a friend of his brother's, that he had known him for at least a year and a half, that he and the defendant had each been to the other's homes on several occasions, that the defendant had just spent a week staying at his brother's home, and that he had helped the defendant jumpstart his vehicle the week prior to the robbery. In addition, the gunman's height and weight fit that of the defendant.

Fifer testified that the Air Jordans were shoes that he regularly kept on the back floorboard of his vehicle. He also said that the defendant had been in his vehicle on several occasions. He stated that while the defendant was ordering him to remove his pants and lie facedown, he could hear one of the defendant's companions, who was armed with a shotgun, similarly ordering Smith to remove his pants and lie down on the ground on the other side

of his vehicle. He testified that he was not hurt but that Smith told him after the men were gone that the man with the shotgun had stomped him in the back during the robbery. Fifer stated that he had the following items taken during the robbery: his car keys, $250 in cash, his cell phone, his Air Jordans from the backseat, his pants, and his work shoes. He said that he waited about two minutes after hearing the gunmen run away and a vehicle subsequently leaving before he got up, jumped some bushes, and fled in the opposite direction.

Officer Richard Rouse of the Memphis Police Department testified that he responded to the robbery call to find two men and a woman who informed him that they had just been robbed and provided a description of the suspects. The men were dressed only in their underwear, and one of them had a muddy footprint on his back, which he said was where he had been stomped during the robbery.

Lieutenant Frank Winston of the Memphis Police Department's Robbery Bureau testified that the robbery victim reported that the voice of his robber sounded familiar to him. Lieutenant Winston then compiled a six-person photographic spreadsheet with the defendant's picture, which he showed to Ms. Ethel Mousa on August 1, 2009, and from which she positively identified the defendant as the driver of the Suburban. Lieutenant Winston said he also went to the corner store in an attempt to view its surveillance tape, but the store's security camera was not working at the time of the robbery.

The defendant elected not to testify but presented two witnesses in his defense. Brandon Gordon, the defendant's cousin, testified that the defendant visited him at his home in Durant, Mississippi, from "about July the twenty-something" until August 9, 2009, when he left with some friends. He said that the defendant, who did not have a car with him during the visit, hung out with Gordon's brother during the day and slept in Gordon's house each night. Gordon's brother, Nathaniel Foster, testified that he picked up the defendant on July 24, 2009, and brought him to Durant, where he remained until August 9 when his friends came from Memphis to take him back home.

As his final evidence, the defendant introduced a stipulation stating that on August 26, 2009, he had issued subpoenas for his alibi witnesses to appear on his behalf at a previous court setting of his case.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant first challenges the sufficiency of the evidence in support of his aggravated robbery conviction, arguing that the proof of his identity was not established

beyond a reasonable doubt. He further challenges the sufficiency of the evidence in support of his aggravated assault convictions, asserting that he was not directly involved in those assaults and that there was no evidence that he was criminally responsible for the actions of the other two men.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

We conclude that the evidence, when viewed in the light most favorable to the State, was sufficient to establish the defendant's identity as one of the robbers. The identification of a defendant as the perpetrator of a crime is a question of fact for the trier of fact to

determine from the evidence presented at trial. See State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Lester's neighbor positively identified the defendant as one of four suspicious-looking men that she saw in a red Suburban at the corner store shortly before the robbery occurred. Fifer saw a similar vehicle pass down the street in front of Lester's home immediately before he was robbed. More importantly, he was unequivocal in his testimony that he recognized one of the robbers as the defendant by his voice as well as his body shape. He also explained why he was so familiar with the defendant's voice by listing his fairly extensive dealings with the defendant over the previous year and a half. See State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) ("The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made."). Fifer further testified that the defendant appeared anxious to prevent him from seeing his face and that the defendant had on several occasions been inside his vehicle, where Fifer regularly kept his Air Jordan shoes. From all this evidence, a rational jury could have found beyond a reasonable doubt that the defendant was one of the perpetrators of the crimes.

We further conclude that the evidence was sufficient to sustain the defendant's convictions for aggravated assault. A defendant is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (2010). A person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both. Id. § 39-11-401(a). When viewed in the light most favorable to the State, the evidence established that the defendant and his two companions, all of whom were armed, surrounded Fifer, Smith, and Lester together, with each one of the gunman then directing his attention to a separate victim until the robbery of Fifer was completed and one of the men called to his companions to go. The three men then fled together. This was sufficient evidence from which the jury could find the defendant guilty, under a theory of criminal responsibility, of the aggravated assaults of Lester and Smith.

## II. Admissibility of Prior Conviction for Impeachment Purposes

The defendant next contends that the trial court erred by ruling that his testimony could be impeached with his 2007 conviction for facilitation of aggravated robbery. He argues that, given the similarity of the conviction to one of the charges for which he was on trial, its probative value on the issue of his credibility was outweighed by the danger of unfair prejudice to his case.

-6-

A conviction may be used to impeach the testimony of an accused in a criminal prosecution if the following four conditions are satisfied: (1) the conviction is for a crime punishable by death or imprisonment in excess of one year, or the conviction is for a misdemeanor which involved dishonesty or false statement; (2) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the subject prosecution; (3) the State gives reasonable pretrial written notice of the particular conviction or convictions it intends to use as impeachment; and (4) the trial court concludes that the probative value of the prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609; State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999).

Two factors should be considered when deciding whether the probative value of a prior conviction outweighs its unfair prejudicial effect. Mixon, 983 S.W.2d at 674. First, "[a] trial court should . . . analyze the relevance the impeaching conviction has to the issue of credibility." Id. (citation omitted). Second, if the trial court finds that the prior conviction is probative of the defendant's credibility, then the court should "'assess the similarity between the crime on trial and the crime underlying the impeaching conviction.'" Id. (quoting Neil P. Cohen et al., Tennessee Law of Evidence § 609.9 at 376 (3d ed. 1995)). The more similar the impeaching conviction is to the offense for which the defendant is on trial, the greater the risk of a prejudicial effect to the defendant. Id.

A trial court should make findings on the record when deciding whether to admit a prior conviction for the purposes of impeachment:

> Tennessee case authority strongly urges judges to explicitly state, on the record, their reasons for allowing or disallowing a criminal conviction to be used for impeachment under Rule 609. The trial court should carefully explain any balancing of factors. Without this record, it will be difficult for appellate courts to determine whether the balancing test was properly applied.

Neil P. Cohen et al., Tennessee Law of Evidence § 6.09[14][b] (5th ed. 2005) (footnotes omitted).

This court reviews a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. See State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003).

We find no abuse of discretion in the trial court's ruling in this matter. Facilitation of robbery is a crime of dishonesty and, therefore, probative of credibility. See State v. Welcome, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007). Moreover, "[t]he fact that a prior

conviction involves the same or similar crime for which the defendant is being tried does not automatically require its exclusion." Id. (citations omitted). In its thorough ruling, the trial court recognized that the conviction for facilitation of aggravated robbery was similar to the aggravated robbery offense for which the defendant was on trial and therefore potentially prejudicial to the defendant. The court found, however, that, given the defendant's alibi defense, the potential prejudice was "heavily outweighed by the probative value of the prior conviction." We agree and, therefore, conclude that the trial court did not err in ruling that the State could impeach the defendant's credibility, had he chosen to testify, with his conviction for facilitation of aggravated robbery.

### III. Failure to Charge Lesser-Included Offenses

As his final issue, the defendant contends that the trial court erred by not charging the jury with all the applicable lesser-included offenses, "particularly facilitation and attempt of the target crimes." In his argument at trial, the defendant requested that the trial court instruct the jury on facilitation, attempt, and reckless aggravated assault as lesser-included offenses of aggravated robbery and on facilitation, attempt, reckless aggravated assault, and reckless endangerment as lesser-included offenses of aggravated assault. Citing case law in support of its decision, the trial court refused those requests, charging the jury only with the lesser-included offenses of robbery, aggravated assault, assault, and theft of property with respect to the indicted offense of aggravated robbery and with the lesser-included offense of assault with respect to the indicted offenses of aggravated assault.

On appeal, the State argues, first, that the defendant has waived the entire lesser-included offense instruction issue by his failure to request in writing that the specific lesser offenses be charged. The State further asserts that the defendant is not entitled to plain error review of the issue because no substantial right of the defendant was affected and consideration of the alleged error is not required to do substantial justice. In the alternative, the State argues, among other things, that the defendant has waived the issue of whether the trial court erred by not instructing the jury on reckless aggravated assault and reckless endangerment by his failure to make any argument in support of those lesser offenses and that the trial court properly denied the defendant's request for facilitation and attempt because the proof at trial was such that no reasonable jury could have found the defendant guilty of those offenses.

Initially, we disagree with the State that the defendant has waived this issue by his failure to request the specific lesser-included offenses in writing. The record contains a "Motion to Instruct the Jury on Lesser Included Offenses," filed on March 11, 2010, in which the defendant requests that the trial court "instruct the jury on the lesser included offense(s) indicated on the attached forms." Although there are no forms attached to the motion, it

appears clear from the trial court's discussion of the proposed jury instructions at trial that the defendant submitted his request as to the specific offenses in writing. We agree, however, that the defendant's failure to include any argument in his brief on reckless aggravated assault and reckless endangerment as lesser-included offenses results in his waiver of our consideration of whether the trial court erred by not instructing the jury on those offenses. A defendant who fails to make an argument on an issue or appropriate citations to the record waives the issue on appellate review. See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

We, further, agree with the State that the trial court did not err in refusing to charge facilitation and attempt as lesser-included offenses based on the fact that there was no evidence in support of those offenses. When a court determines whether an instruction on a lesser-included offense is warranted, it must first consider whether any evidence exists that reasonable minds could accept in support of the lesser-included offense. See State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999). The court must then consider whether the evidence, viewed in the light most favorable to the existence of the lesser-included offense, is legally sufficient to support a conviction for the lesser-included offense. Id. In so doing, the court must consider the evidence liberally, in a light most favorable to the existence of the lesser-included offense, without making any judgments on the credibility of the evidence. State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001); Burns, 6 S.W.3d at 469.

As the State notes, instructions on lesser-included offenses "are unnecessary where the evidence clearly establishes completion of the criminal act or simply does not involve proof of solicitation or facilitation." State v. Banks, 271 S.W.3d 90, 125 (Tenn. 2008) (footnote and citations omitted). In this case, there was no proof by which a reasonable jury could find that the crimes were attempted, but not completed. Similarly, there was no proof to show that the defendant, knowing that his companions intended to commit the aggravated assaults of Lester and Smith, but without the intent required for criminal responsibility, knowingly furnished substantial assistance in the commission of the offenses. See Tenn. Code Ann. § 39-11-403(a). Under the facts of this case, the defendant was either an active participant in the criminal endeavor, and thus culpable as a principal, or he was elsewhere at the time of the crimes and his alleged involvement was simply a case of mistaken identity on the part of the victim and the witness. We conclude, therefore, that the defendant is not entitled to relief on the basis of this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE