# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 21, 2014

## STATE OF TENNESSEE v. ERNEST H. PYLE

### Appeal from the Circuit Court for Sevier County
### No. 15376II    Richard R. Vance, Judge

---

### No. E2013-01977-CCA-R3-CD - Filed November 2, 2014

---

Defendant, Ernest H. Pyle, was charged by presentment with two counts of especially aggravated kidnapping, two counts of aggravated kidnapping, and one count of resisting arrest. The trial court dismissed at the request of the State the two counts of aggravated kidnapping. A petit jury convicted Defendant of the remaining counts. The trial court properly merged Defendant's two counts of especially aggravated kidnapping and sentenced Defendant to 25 years' incarceration. In this appeal as of right, Defendant contends that the evidence was insufficient to support his conviction, and that trial court erred by not granting a mistrial after allowing evidence of a prior bad act. Having carefully reviewed the record before us and the briefs of the parties, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. J., joined. JEFFREY S. BIVINS, J., not participating.

James R. Hickman, Jr., Sevierville, Tennessee, for the appellant, Ernest H. Pyle.

Herbert H. Slatery, III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; James B. (Jimmy) Dunn, District Attorney General; Ashley McDermott, and George Ioannides, Assistant District Attorneys General, for the appellee, the State of Tennessee.

## OPINION

*Facts*

The victim in this case, K.M., (we will refer to the victim by initials) testified that she began dating Defendant in late August or early September 2009. She testified that she met

Defendant through an online chat group. The victim moved in with Defendant in Milan, Indiana. K.M. testified that Defendant used and sold marijuana. K.M. moved out. Her sister contacted the police and informed them about Defendant's criminal activities. Defendant was arrested and incarcerated. Upon Defendant's release, he promised K.M. that he would stop using marijuana and "go to rehab." K.M. moved in with Defendant again. Sometime thereafter, Defendant told K.M. that he was "in trouble in Indiana" and needed to leave the state. Defendant and K.M. fled to Tennessee.

On February 16, 2010, they stopped at a Super 8 Motel in Sevier County. Defendant paid for a hotel room in cash and used K.M.'s name. A few hours later, Defendant told K.M. that they needed to change hotels. They drove to another nearby hotel, and Defendant again paid for a room in cash and used K.M.'s name. He told her to call him "Eric." They continued to change hotels until they settled at the Grand Inn in Pigeon Forge, Tennessee. While there, K.M. told Defendant that she wanted to return to Indiana. Defendant initially agreed to take her to Indiana, but when K.M. began to pack her clothes, Defendant attacked her from behind. She testified that Defendant "violently assaulted" her. Defendant slapped her face, covered her mouth with tape, and handcuffed her hands together. K.M. tried to kick and punch Defendant while he dragged her into the bathroom, and Defendant choked K.M. until she lost consciousness.

When K.M. regained consciousness, she was in another part of the hotel room near the refrigerator. She was in pain and had bruises on her face, chest, ankles, and arms. She asked Defendant why he attacked her, and he responded that it was because she and her sister "turned him in." Defendant continued to restrain K.M. for five days. Whenever Defendant would leave the hotel room, he handcuffed K.M. to the shower. He told her that if he heard her "make a sound he was going to break [her] neck." Defendant threatened to kill the victim. He told her that he would "carve in [her] body [the words], 'live like a snitch, die like a snitch[,]'" and mail her body to the Milan, Indiana Police Department.

Defendant unplugged the hotel room phone and put it inside a drawer. He removed the batteries from his and K.M.'s cell phones and put the phones in plastic bags. Defendant also put "thumbcuffs" on the victim. After one of Defendant's trips out, he returned to the hotel room with a Walmart bag containing a drop cloth, a hammer, pliers, and a screwdriver. Defendant told K.M. that he was going to "bash [her] brains out" using the hammer and pull out her fingernails with the pliers. K.M. testified that Defendant later disposed of the tools in the hotel dumpster.

On February 25, 2010, K.M. rode with Defendant in his truck to a nearby laundromat. She sat inside the truck while Defendant went inside to do laundry. K.M. testified that she did not believe she could flee from Defendant at that time because she thought he would

catch her if she ran. When they returned to the hotel, she convinced Defendant to take the laundry to the room while she remained in the truck. While Defendant was in the hotel elevator, K.M. ran to the manager's office.

Margaret Ellis, the manager on duty at the Grand Inn, testified that the victim came into the office "bruised up and bloody," saying she had been beaten. Ms. Ellis put K.M. in a locked room and called security. Ms. Ellis saw Defendant circling the parking lot in his truck. She testified that K.M. was "frantic and scared."

Officer Tom Pressley, of the Pigeon Forge Police Department, responded to a call "of a possible domestic" at the Grand Inn at 9:25 p.m. When he arrived, a hotel security guard had stopped Defendant's vehicle. Officer Pressley went to the hotel office to gather information about the call. While he was in the office, Defendant ran from the scene. Corporal Mitchell Breeden pursued Defendant and apprehended him. Officer Pressley arrived and helped handcuff Defendant. He searched Defendant and found a set of handcuff keys on Defendant's person. Officer Pressley also found on Defendant's person two cell phones with the batteries removed, and they were wrapped in paper bags and duct tape.

Officer Pressley returned to the hotel office and spoke with the victim. He observed petechiae, burst blood vessels associated with strangulation, in and around the victim's eyes. K.M. also had bruising around her wrists. Officer Pressley found handcuffs, thumbcuffs, and duct tape in the nightstand drawer in the hotel room. The room phone had been unplugged and was also in the nightstand drawer. He found two dropcloths in a suitcase beside the bed. In the dumpster behind the hotel, officers found a blue plastic tote containing a tool kit with a hammer, pliers, and other tools.

Defendant testified that when he and K.M. left Indiana, he was not running from marijuana charges placed against him. He testified that his court date had been rescheduled because of a snow storm. He testified K.M. suggested they go to Gatlinburg "to get away from the area just to like patch things up and everything." Defendant testified that he used his name and identification to check in at the Super 8 motel. He testified that they stopped there because it was late, they were tired, and he did not know how far away they were from Gatlinburg. The following day, they checked in at a Scottish Inn, but they left after one day because Defendant testified that it "was a really horrible place." Defendant testified that they checked in using K.M.'s name because she "had her ID handy right there and suggested that [and Defendant] didn't think twice about it."

On the third night, they checked in at the Grand Inn. Defendant denied that he attacked K.M.. Defendant testified that K.M. frequently had "emotional outbursts." Defendant testified that on the way to the laundromat, he told K.M. that he wanted to end

their relationship. He told her that when they returned to Indiana, he wanted to "go [their] separate ways." He testified that K.M. "was starting to get moody and unstable during the week." Defendant testified that K.M. "had some mental health issues," and "she needed to be on medication." He testified that he and K.M. had gone out in Gatlinburg prior to his arrest, and K.M. "got really nervous" about the crowds and "refused to get out of the truck." On the day of the arrest, Defendant and K.M. had decided to drive to South Carolina, but they drove to Virginia instead. He testified that they left the hotel room "at least once a day, sometimes twice a day, to go for drives" during the week that K.M. testified Defendant held her captive.

Defendant testified that he unplugged the room phone and put it in the drawer because the manager at the Grand Inn called them every morning to inform them of breakfast, and it bothered them. Defendant testified that he bought the plastic tarp and duct tape to cover their luggage in the back of his truck so it would not be ruined by the weather. Defendant testified that K.M.'s eyes became bloodshot after she had "a nervous breakdown" earlier in the week because she believed that she might go to jail as a result of Defendant's drug charges. Defendant testified that the victim threw herself against a plate glass window, and then bounced off and fell onto a table. He said the victim was "freaking out" and "digging at her eyes." Defendant testified that he bought the tool kit to fix K.M.'s glasses because they were bent. He only used the pliers out of the kit. He intended to keep the tools in his truck to use, but K.M. made statements that Defendant was "going to get back at [her]" and "use that plastic [Defendant] bought to kill [her] and wrap [her] up and throw [her] on the side of the road." Defendant testified that K.M. was "paranoid." Defendant threw the tools in the dumpster to "make her feel comfortable." Defendant testified that the handcuffs and thumbcuffs "were part of [their] sexual relationship."

Defendant admitted that he ran from the police. He testified that he panicked and his actions were "extremely stupid."

*Analysis*

Defendant contends that the evidence was insufficient to support his conviction for especially aggravated kidnapping. "When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); Tenn. R. App. P. 13(e). "Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, on appeal a defendant bears the burden of showing why the evidence is insufficient to support the conviction." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn.

2012); *see also State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *See Wagner*, 382 S.W.3d at 297; *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The jury, as the finder of fact, is responsible for assessing the credibility of the witnesses, deciding the weight to accord their testimony, and reconciling any conflicts in the proof. *See Wagner*, 382 S.W.3d at 297; *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). On appeal, this court cannot re-weigh the evidence or draw any inferences from it other than those drawn by the jury. *See Wagner*, 382 S.W.3d at 297; *Cabbage*, 571 S.W.2d at 835. A guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of both. "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *Dorantes*, 331 S.W.3d at 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

The State charged Defendant under alternate theories of especially aggravated kidnapping in Counts 1 and 2 of the indictment, defined respectively as "false imprisonment . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon . . . or [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-305(a)(1) and (4). "A person commits . . . false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a). "'Serious bodily injury' means bodily injury which involves: (A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" Tenn. Code Ann. § 39-11-106(a)(34). "Deadly weapon," as applicable in this case, means "[a]nything that in the manner of its use or intended use is capable of causing death or serious injury." Tenn. Code Ann. § 39-11-106(a)(5)(B).

The jury in this case found Defendant guilty of especially aggravated kidnapping in both Counts 1 and 2, and the trial court properly merged the offenses prior to sentencing. Defendant argues that the evidence was insufficient to establish that Defendant either used or threatened to use a deadly weapon or that the victim suffered serious bodily injury by means of protracted unconsciousness. The State asserts that the evidence is sufficient to support Defendant's conviction under either theory.

The evidence shows that Defendant confined K.M. to the hotel room using handcuffs. Defendant threatened to "bash [the victim's] brains out" with a hammer he had purchased. Defendant acknowledges that the victim testified that Defendant threatened to "bash [her] brains out." Defendant also concedes that a hammer is capable of causing death or serious injury. Defendant argues, however, that because the victim testified that she never saw

Defendant remove the hammer from the store packaging, and because Defendant disposed of the tools in the dumpster, Defendant did not intend to use the hammer as a deadly weapon. We disagree. Defendant threatened his intended use of the hammer to "bash the victim's brains out," and the jury credited the victim's testimony. Accordingly, the evidence is sufficient to support Defendant's conviction for especially aggravated kidnapping by use of a deadly weapon.

Defendant concedes that he rendered the victim unconscious but argues that the evidence was insufficient to establish that K.M.'s unconsciousness was protracted. "'Protracted' is an adjective used to describe something that is delayed or prolonged in time." *State v. Derek Denton*, No. 02C01-9409-CR-00186, 1996 WL 432338, at *5 (Tenn. Crim. App., Aug.2, 1996) (citations omitted). K.M. testified that Defendant choked her until she lost consciousness. When she regained consciousness, she was in a different part of the room than she had been when she lost consciousness, and she had injuries that she did not know how she sustained. K.M. did not know for how long she was unconscious. She testified that it was "almost like after going in for surgery and you're falling asleep. It's like everything goes like bright and then it goes like dim, basically." She testified that when she retained consciousness, she "was dazed [and] couldn't fight." K.M.'s eyes were severely bloodshot from having been choked. When police officers encountered her after she escaped, she still had petechia.

Defendant relies on *State v. David Earl Scott*, No. E2011-00707-CCA-R3-CD, 2012 WL 5503951 (Tenn. Crim. App., Nov. 14, 2012), *perm. app. denied* (Tenn., Mar. 5, 2013). In that case, the victim testified that she was not unconscious for long. *Id*. at *6. Here, K.M. was unable to testify as to the length of time she was unconscious, but she did not indicate that it was brief as did the victim in *David Earl Scott*. There is not a minimum period of time for an event to be "protracted." The facts of this case meet the definition of "protracted" provided in *Derek Denton*. We conclude that the evidence was sufficient to establish that the victim suffered protracted unconsciousness.

Next, Defendant contends that the trial court erred by not granting a mistrial after the victim testified that Defendant sexually assaulted her during her captivity, conduct for which Defendant was not charged. A mistrial is a procedural device through which the court stops the trial, discharges the jury, and holds a new trial with a new jury to determine the defendant's guilt. *See State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). A mistrial is declared in order "to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *State v. Welcome*, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007). Only manifest necessity justifies the declaration of a mistrial, and the defendant bears the burden of showing manifest necessity. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). A mistrial is appropriate where

a trial cannot continue, or the trial's continuation would be a miscarriage of justice. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). The decision to grant a mistrial rests in the sound discretion of the trial court, and the trial court's decision will not be overturned on appeal absent an abuse of discretion. *State v. Reid*, 91 S.W.3d 247, 279 (Tenn. 2002). In determining whether the trial court has abused its discretion, an appellate court considers: (1) whether the State elicited the testimony; (2) whether the trial court gave a curative instruction; and (3) the relative strength or weakness of the State's proof. *Welcome*, 280 S.W.3d at 222.

In the present case, the testimony at issue was elicited by the State during the victim's direct testimony. The prosecutor asked, "Did he sexually assault you?" K.M. responded, "Yes, he did. But if he's not being charged with it then I don't see the relevance of me even discussing it." Defense counsel requested a mistrial, and the trial court ruled, "[i]t's part and parcel with the events. She's described what happened to her and if that's part of what happened to her then [so be it]. But I will certainly instruct the jury on offenses that were not charged. But it tells the entire story of the event." The trial court denied Defendant's request for a mistrial. K.M. testified that she did not tell the police about the sexual assault, but she testified about it at the preliminary hearing. The prosecutor asked K.M. to explain what happened, and she responded, "I would rather not." Defense counsel objected, arguing that "the prejudicial value continues to go up." The trial court overruled the objection.

Following a break in the trial, defense counsel informed the court that a motion in limine was filed seeking to exclude from evidence "any 404(b) evidence that was intended to be produced" by the State. The trial court ruled,

> It's not 404(b) evidence. This testimony, the question and answer relates
> to the conduct itself that was taking place within the criminal offense itself.
> It's not a separate other offense. It's uncharged conduct but it is part and
> parcel of the offense. So whatever happened between these two, the
> defendant and K.M., is admissible as part and parcel of the crime itself.

Later during the victim's testimony, the prosecutor again asked her about the sexual assault, and K.M. responded, "I still do not want to talk about it." The prosecutor asked, "How were you sexually assaulted?" K.M. responded that Defendant had "forced [her] to have sex with him. I'll just say that." She testified that she was handcuffed and that the sexual assault consisted of anal penetration. During his testimony, Defendant conceded that he engaged in anal sex with the victim, but he testified that it was consensual.

It is well-established precedent "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that

discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). The general rule is that evidence of a defendant's uncharged criminal conduct is inadmissible, especially when previous crimes or acts are of the same character as the charged offense, because such evidence is irrelevant and "invites the finder of fact to infer guilt from propensity." *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). Tennessee Rule of Evidence 404(b) permits the admission of evidence of uncharged criminal conduct if the evidence of other acts is relevant to a litigated issue such as identity, intent, or rebuttal of accident or mistake, and the probative value outweighs the danger of unfair prejudice. Tenn. R. Evid. 404(b) Advisory Comm'n Cmts.; *see State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985); *State v. Hooten*, 735 S.W.2d 823, 824 (Tenn. Crim. App. 1987). However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Before admitting evidence under Rule 404(b), the rule provides that (1) upon request, the court must hold a hearing outside the jury's presence; (2) the court must determine that the evidence is probative on a material issue and must, if requested, state on the record the material issue and the reasons for admitting or excluding the evidence; (3) the court must find proof of the other crime, wrong, or act to be clear and convincing; and (4) the court must exclude the evidence if the danger of unfair prejudice outweighs its probative value. Tenn. R. Evid. 404(b).

In reviewing a trial court's decision to admit or exclude evidence under Rule 404, an appellate court may disturb the trial court's ruling only if there has been an abuse of discretion. *State v. Thacker*, 164 S.W.3d 208, 240 (Tenn. 2005). The trial court's determination is entitled to deference when it has substantially complied with the procedural requisites of Rule 404(b). *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997). If, however, the strict requirements of the rule are not substantially observed, the reviewing court gives the trial court's decision no deference. *See id*.

From the record before us, the trial court failed to substantially comply with the requirements of Rule 404(b). Although Defendant filed a motion in limine, requesting a hearing outside the presence of the jury before the admission of any 404(b) evidence, there was no pretrial hearing to determine the admissibility of the evidence at issue. At trial, the trial court failed to make any of the findings required by Rule 404(b), except to say that the sexual offense was "part and parcel" of the kidnapping. Consequently, the court's ruling is entitled to no deference.

The State, on appeal, asserts that the evidence was admissible to show Defendant's motive or intent for Defendant's kidnapping of the victim. The State cites *State v. Terry Stewart Moore*, No. E2001-00153-CCA-R3-CD, 2002 WL 1787947 (Tenn. Crim. App., Aug. 2, 2002), in which a panel of this court held that evidence that the defendant had sexually assaulted his unconscious victim and committed other acts of physical abuse prior to her

death from an earlier blow to the head was admissible to show the defendant's intent to harm the victim. This court concluded that the other bad acts were "part of the same criminal transaction, not a prior bad act but a concurrent bad act inseparable from the commission of the crime." *Id*. at *9.

Although the victim testified that the sexual assault occurred during the commission of the kidnapping, we do not agree that evidence of the sexual assault was *per se* admissible without a Rule 404(b) analysis. We also conclude that although the sexual assault was a concurrent bad act, it was not inseparable from the commission of the kidnapping. The exclusion of the victim's testimony that Defendant sexually assaulted her would not have prevented the State from presenting all of the evidence necessary to establish the elements of kidnapping, nor was evidence of the sexual assault necessary to explain the kidnapping.

We also do not agree with the State that evidence of the sexual assault was relevant to show Defendant's motive. Prior to trial, the State filed a motion seeking to introduce evidence of Defendant's drug charges in Indiana in order to "show that K.M., the victim in this case, was kidnapped because she was to testify in the case against the Defendant in Ripley County, Indiana." Following a pretrial hearing, the trial court granted the State's motion, ruling as follows:

> In this case, the discussions, conversations and arguments between the defendant and the victim made at the time of the offense certainly are admissible. If it's an accusation of a crime, if it's an argument over criminal charges, whatever it is that led to the offenses here, those are admissible to tell the entire story of the facts and circumstances. To do otherwise would sterilize the proof to a sudden offense occurring out of a vacuum. In order for the jury to make a decision about the facts they need to know all the facts surrounding the circumstances between the parties, their relationship, what caused this problem between them.

Although Defendant does not challenge the trial court's ruling regarding evidence of Defendant's charges in Indiana, we note the trial court's ruling simply to state that the State's theory and the evidence presented at trial showed that Defendant's motive for kidnapping the victim was not to sexually assault her, (as claimed by the State on appeal), but rather to prevent her from testifying against him on the charges in Indiana. The victim testified that Defendant was in Tennessee because he was fleeing from the charges. It was not until the victim stated that she wanted to return to Indiana that Defendant restrained the victim.

Nevertheless, we conclude that the trial court did not abuse its discretion by denying Defendant's request for a mistrial. We conclude that any error in admitting evidence of the

sexual assault was harmless in light of the evidence against Defendant. *See* Tenn. R. App. P. 36(b) (A defendant will not be entitled to relief unless the error "more probably than not affected the judgment or would result in prejudice to the judicial process."); *see also State v. Rodriguez*, 254 S.W.3d 361, 375 (Tenn. 2008).

Here, the victim testified that Defendant assaulted her, handcuffed her, and choked her into unconsciousness before holding her captive in the hotel room and threatening to kill her. The evidence established that the frantic, bloody and bruised victim ran into the front office of the Grand Inn and told the manager that Defendant had beaten her. While waiting for assistance, the manager observed Defendant circling the parking lot in his truck. When the police arrived, Defendant attempted to run from them. Police found handcuff keys on Defendant's person. The victim's injuries were consistent with strangulation and bruises on her wrists. A search of the room occupied by Defendant and the victim revealed disassembled cell phones sealed in a bag with duct tape, handcuffs, thumbcuffs, duct tape, and a drop cloth. The room phone was disconnected, and officers found a took kit in the dumpster, as the victim described in her testimony.

In light of the overwhelming evidence against Defendant, the victim's brief testimony regarding Defendant's sexual assault of her during her captivity did not result in prejudice to Defendant. Moreover, the trial court gave the following jury instruction:

> If from the proof you find that the defendant has committed crimes other than that for which [he] [she] [sic] is on trial, you may not consider such evidence to prove [his] [her] [sic] disposition to commit such a crime as that on trial.
>
> This evidence may only be considered by you for the limited purpose of determining whether it provides:
>
> (a) the complete story of the crime; that is, such evidence may be considered by you where the prior crime[s] and the present alleged crime are logically related or connected, or are part of the same transaction, so that proof of the other tends, or is necessary to prove the one charged, or is necessary for a complete account thereof.
>
> . . . .

We conclude that although the trial court admitted the evidence in error, the error was harmless.

-10-

Finally, Defendant asserts that the State strategically did not charge Defendant with a sexual assault because, Defendant argues, under the facts of this case, the kidnapping offense would have been "essentially incidental" to the sexual offense. Defendant argues that the State's failure to charge Defendant with a sexual offense makes the admission of the victim's testimony about the sexual offense "that much more prejudicial." We conclude that even if Defendant had been charged with a sexual assault, the facts of this case support a separate conviction for kidnapping because Defendant restrained the victim for longer than was necessary to commit a sexual offense. *See State v. White*, 362 S.W.3d 559 (Tenn. 2012).

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE