IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 26, 2007 Session

## STATE OF TENNESSEE v. MARCUS DWAYNE WELCOME

**Appeal from the Criminal Court for Knox County**
**No. 81546     Richard R. Baumgartner, Judge**

_____

**No. E2006-01839-CCA-R3-CD - Filed September 27, 2007**

_____

The defendant, Marcus Dwayne Welcome, appeals as of right his Knox County Criminal Court jury conviction for criminal responsibility for aggravated robbery for which he received a sentence of twenty years as a Range II, multiple offender. On appeal, he contends that double jeopardy precludes his conviction, that the verdict form incorrectly and prejudicially characterized criminal responsibility as a lesser included offense of aggravated robbery, that the trial court should have granted a mistrial based upon the witness's reference to the defendant's previous incarceration, that the trial court erred in ruling a prior robbery admissible for impeachment purposes, and that the trial court committed errors related to sentencing. Following our review, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined. JOSEPH M. TIPTON, P.J., filed a concurring opinion.

Mark Stephens, District Public Defender; and John Halstead, Assistant District Public Defender, for appellant, Marcus Dwayne Welcome.

Robert E. Cooper, Jr., Attorney General & Reporter; Rachel West Harmon, Assistant Attorney General; Randall E. Nichols, District Attorney General; James D. Holley, Jr., and Takisha M. Fitzgerald, Assistant District Attorneys General, for appellee, State of Tennessee.

## OPINION

The defendant's conviction arises from his participation in the aggravated robbery of his eighty-two-year-old uncle, Jesse Willard Turner. Turner testified that the defendant visited him often and had been at his home several times earlier in the day on September 24, 2004. He said that on one occasion, the defendant left his jacket. Turner testified that around midnight, as he was

preparing to take a shower, he heard a knock at his door. He recognized the defendant's voice and, although nude, opened the door to allow the defendant to retrieve his jacket. Upon entering the residence, instead of walking toward the jacket, the defendant walked straight to Turner's bedroom. Turner stated that another individual followed the defendant into the home and that he was armed with a gun. The individual directed Turner not to look at him, a request that Turner stated he quickly complied with out of fear for his own safety. Turner recalled that the defendant told him that no one was going to hurt him but they just wanted some money. As the defendant and the other individual went to look for money, Turner testified that he ran nude to a neighbor's house, who gave him some clothes to wear, and called the police. The police arrived at the scene approximately forty-five minutes later and Turner returned home to find his wallet and its contents scattered on the floor. Missing from the wallet were one hundred and fifty dollars he had saved for car insurance and some emergency money. Turner testified that the police told him that they would not pursue the case and advised him to file a warrant "since he [knew] who it was" but also stated that "[b]ecause it's your nephew, you probably ain't going to do nothing about it."

On cross-examination, Turner acknowledged that he lived in a dangerous area of town, but stated that he opened the door in the nude because he recognized the defendant's voice. He also stated that the defendant never threatened him with a weapon and that the only armed person was the unidentified individual who followed the defendant into the home. He acknowledged that the police did not take any fingerprints, but explained that was because he had told them that the defendant committed the robbery. He testified that he was not injured during the incident.

*Erroneous Verdict Form and Double Jeopardy Issues*

The defendant argues that his conviction for criminal responsibility for aggravated robbery should be reversed because, he claims, the jury acquitted him of aggravated robbery as set out in the verdict form. The verdict form, in pertinent part, reads as follows:

> We the Jury, find the defendant (guilty)(not guilty)[circle one] of **Aggravated Robbery**.
>
> **IF YOU FIND THE DEFENDANT GUILTY OF A GREATER OFFENSE, YOU DO NOT NEED TO CONSIDER ANY OF THE FOLLOWING LESSER INCLUDED OFFENSES:**
>
> We the Jury, find the defendant (guilty)(not guilty)[circle one] of Criminal Responsibility of Aggravated Robbery.
>
> We the Jury, find the defendant (guilty)(not guilty)[circle one] of Facilitation of a Felony, *a lesser included offense.*
>
> We the Jury, find the defendant (guilty)(not guilty)[circle one] of **Robbery**, *a lesser included offense.*

(Emphasis added). The verdict form lists, in descending order, robbery, aggravated assault, assault and theft as lesser included offenses of aggravated robbery. Facilitation of a felony is also properly listed as a lesser included offense of aggravated robbery. Included in each verdict option is the phrase "a lesser included offense" where appropriate for a lesser included offense. The verdict option relevant to criminal responsibility does not include the phrase "a lesser included offense." In returning its verdict, the jury circled "not guilty" for the offense of aggravated robbery but circled guilty for criminal responsibility for aggravated robbery. The guilty verdict as announced by the foreperson was for criminal responsibility for aggravated robbery as well. The defendant contends that a plain reading of the verdict form shows that the jury found him to be not guilty of aggravated robbery. Therefore, he argues, this amounts to an acquittal of the charged offense under all theories of culpability embraced in the indictment. The state argues that the trial court properly instructed the jury that criminal responsibility for the conduct of another was one theory of culpability for aggravated robbery and that the verdict announced represented a special verdict relative to the theory of culpability. Therefore, the state argues, the conviction should be affirmed despite the wording of the order of consideration on the verdict form.

A criminal defendant has the right to a complete and accurate charge of the law given to the jury by the trial court. State v. Stephenson, 878 S.W.2d 530, 555 (Tenn. 1994). For the purposes of determining whether a defendant has been afforded that right, the jury charge should be "viewed in its entirety" and "considered as a whole." Id. (citing Otis v. Cambridge Mutual Fire Insurance Co., 850 S.W.2d 439, 446 (Tenn. 1992)). Our supreme court has explained that "inconsistent or contradictory instructions 'do not neutralize or validate each other'" and that "'[t]he parties are entitled to a clear and consistent charge, as well as a correct one, that justice may be reached.'" Id. (quoting Citizens Street Railroad Co. v. Shepherd, 107 Tenn. 444, 64 S.W. 710, 711 (1901)). Therefore, this court's inquiry must be whether the language of the verdict form renders the jury instruction inconsistent or contradictory when read in its entirety.

Relevant to criminal responsibility, the trial court correctly instructed the jury that:

> The defendant is criminally responsible as a party to the offense of aggravated robbery or any lesser included offenses if the offense was committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or by both. Each party to the offense may be charged with the commission of the offense.

> The defendant is criminally responsible for an offense committed by the conduct of another if acting with the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense, the defendant solicits, directs, aids, or attempts to aid another person to commit the offense.

> *Before you find the defendant guilty of being criminally responsible for said offense committed by the conduct of another, you must find that all the essential elements of said offense have been proven by the state beyond a reasonable doubt.*

(Emphasis added). In its preliminary instructions to the jury, the trial court went further to explain that criminal responsibility means that "you can be guilty as the principal of the offense, or you can be criminally responsible for the conduct of the person that committed the offense. If you're criminally responsible, you share the same culpability for the crime as the principal of the offense." The trial court also correctly outlined the lesser included offenses of aggravated robbery, never listing criminal responsibility as such, and always distinguished criminal responsibility from the lesser included offenses in its instructions to the jury. Furthermore, the trial court correctly instructed that "[i]f you find him guilty of any offense, you do not need to go on and consider any lesser-included offenses. But if you find him not guilty of the charged offense *or criminal responsibility* or facilitation, then you go on to consider the lesser-included offenses in descending order."

The trial court correctly instructed the jury that criminal responsibility for the conduct of another is not a separate offense, but is merely a theory of liability for an offense.[1] State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). In order to convict a defendant of criminal responsibility, the elements of the principal offense must be proven beyond a reasonable doubt. Furthermore, a person found guilty of an offense through a criminal responsibility theory is guilty of the same offense and subject to the same punishment as the person who actually commits the conduct; in other words, criminal responsibility is not a lesser included offense. It is clear from a review of the instructions in their entirety that the trial court understood all of these principles and correctly instructed the jury accordingly. As previously noted, the trial court did not specifically characterize criminal responsibility as a lesser included offense in the verdict form as it did the actual lesser included offenses of robbery, facilitation, aggravated assault, assault and theft. This court concludes that, despite the inartful wording of the transition language of the verdict form, the jury's notation on the verdict form is a special verdict that represents the determination by the jury that the defendant was not the principal offender but is criminally responsible for the unidentified individual's actions. Such a determination is certainly reasonable in light of the evidence presented by the victim regarding the defendant's participation in comparison to that of the unidentified co-perpetrator. It is clear from this record that the jury understood the instructions and correctly applied the law to the facts of this case. Therefore, this court concludes that the jury instructions, when read in their entirety, are not inconsistent or contradictory. We further conclude that the verdict does not violate double jeopardy. The verdict as announced by the foreperson and as noted on the verdict form clearly represents a finding by the jury that the defendant was not guilty as a principal offender, but

---

[1] As such, our courts have held that a special verdict regarding criminal responsibility is not constitutionally required. Lemacks, 996 S.W. 2d at 171. Therefore, the trial court could have submitted this case to the jury without any specific finding on the verdict form regarding criminal responsibility. We recommend that trial courts follow this practice in order to avoid similar issues with verdict forms in future cases.

was guilty as someone criminally responsible for the conduct of the unidentified perpetrator, a theory of culpability encompassed in the charged offense and correctly instructed to the jury. The defendant is not entitled to relief regarding this issue.

*Reference to Prior Incarceration of Defendant*

The defendant contends that trial court should have declared a mistrial when the victim, Turner, referred to his prior incarceration during cross-examination. The state argues that the trial court did not abuse its discretion in refusing to declare a mistrial because the testimony was elicited on cross-examination, the trial court gave an appropriate curative instruction, and the strength of the case was great because Turner was the only witness presented and his testimony was undisputed. On direct examination, Turner testified that the defendant had not lived with him. On cross-examination, the following exchange occurred:

> Q:      . . . You said Marcus Welcome is your nephew?
> A:      Yeah.
> Q:      But you said he's never lived with you? Are you sure he didn't live with you for a couple of months?
> A:      No. When he got out of the penitentiary, my – my sister called from Ohio and asked me to let him move in with me, and I told him, no. He couldn't move in with me. Can't nobody move in with me because all I can do, have a visitor for 14 days, and after 14 days, if I don't put them on the lease, I'll be convicted – I mean put out. I didn't have no place else to go. So I couldn't let him live with me.

The defendant immediately requested a mistrial. The trial court denied the motion for a mistrial because the jury was "going to hear about some prior convictions in this case" should the defendant testify. The trial court offered a curative instruction instead. The trial court instructed the jury that Turner's comment regarding a prior incarceration of the defendant "should have no bearing on this case one way or the other" and told the jury to "put that out of your minds" and do not "consider that for any purpose in this trial in making a decision in this case."

The purpose of declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App.1996). A mistrial is only appropriate when the trial cannot continue without causing a miscarriage of justice. See State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). For a mistrial to be declared, there must be a "manifest necessity." State v. Robinson, 146 S.W.3d 469, 494 (Tenn. 2004). The decision to grant a mistrial is within the discretion of the trial court, and that decision will not be disturbed on appeal unless there was an abuse of discretion. State v. Reid, 91 S.W.3d 247 (Tenn. 2002). In reviewing for an abuse of discretion, this court has held that the following three factors should be considered: (1) whether the State elicited the testimony, (2) whether the trial court gave a curative instruction, and (3) the relative strength or weakness of the State's proof. State v. Lawrence Taylor, 2003 WL 402276, No. W2002-00183-CCA-R3-CD, at

-5-

*10 (Tenn. Crim. App. Feb. 14, 2003). In applying these considerations to this case, we note that the reference to the penitentiary was brief and in an attempt to explain a response to a question on cross-examination. The trial court gave a prompt curative instruction. These factors weigh against the grant of a mistrial. Furthermore, we agree that the state's case was strong in light of the uncontroverted testimony of the defendant's uncle. Therefore, we conclude that the trial court did not abuse its discretion in denying the motion for mistrial.

*Admissibility of Prior Robbery for Impeachment*

The defendant contends that the trial court erred in ruling that a prior conviction for robbery could be used for impeachment pursuant to Tennessee Rules of Evidence 609. He argues that the prejudicial effect of the conviction outweighed its probative value. We disagree.

Rule 609(a)(3) of the Tennessee Rules of Evidence allows for the admission of a prior conviction to impeach the credibility of a defendant testifying at trial. Prior to its admission, the trial court is required to determine whether "the conviction's probative value on credibility outweighs its unfair prejudicial effect on substantive issues." Tenn. R. Evid. 609(a)(3). This court will only reverse a trial court's decision only if the trial court abused its discretion. State v. Williamson, 919 S.W.2d 69, 78 (Tenn. Crim. App.1995).

In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues, a trial court should consider (1) the relevance of the impeaching conviction with respect to credibility, and (2) the similarity between the crime in question and the underlying impeaching conviction. State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003). This court has held that robbery is a crime of dishonesty and probative of credibility. State v. Caruthers, 676 S.W.2d 935, 941 (Tenn. 1984). The fact that a prior conviction involves the same or similar crime for which the defendant is being tried does not automatically require its exclusion. State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997); State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987). However, if "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." Long v. State, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). The trial court must analyze the prior conviction and the offense on trial to determine if the conviction's probative value on credibility is outweighed by the danger of unfair prejudice.

In this case the trial court determined that the defendant's prior conviction for aggravated robbery was a crime of dishonesty and probative of the defendant's credibility. The trial court gave specific consideration to the similarity between the present aggravated robbery charge and the defendant's previous conviction for robbery. It determined that the robbery should be admitted for impeachment purposes because "credibility [was] everything in [the] case." We cannot conclude under the circumstances of this case that the trial court abused its discretion in determining that the probative value of the defendant's robbery conviction relative to credibility outweighed any danger of unfair prejudice to the defendant. See State v. Blevins, 968 S.W.2d 888, 893 (Tenn. Crim. App.1997) (concluding that the trial court did not abuse its discretion in allowing the defendant to

be impeached with burglary, robbery, and larceny convictions when the defendant was on trial for burglary of a motor vehicle); see also State v. Lamario Sumner, No. W2005-00122-CCA-R3-CD, at *3-4 (Tenn. Crim. App. Jan. 6, 2006) (affirming the trial court's decision to allow the defendant to be impeached with a prior aggravated robbery conviction when the defendant was on trial for aggravated robbery). The defendant is not entitled to relief on this issue.

*Sentencing*

The defendant argues that his twenty-year sentence as a Range II, multiple offender is erroneous. He contends that the trial court applied enhancement factors in violation of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). He also contends that the determination of his range status was erroneous because the existence of prior convictions that it is based upon should have been submitted to a jury. In summary, he argues that the proper sentence is the minimum sentence of eight years as a Range I, standard offender.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. If the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Pursuant to the 1989 Sentencing Act, the presumptive sentence to be imposed for a Class B felony such as aggravated robbery was the minimum in the range. Tenn. Code Ann. § 40-35-210(c)(2003). The 1989 Sentencing Act also provided that, procedurally, the trial court was to increase the sentence within the range based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. at (d) and (e). The weight to be afforded an existing factor was left to the trial court's discretion so long as it complied with the

purposes and principles of the 1989 Sentencing Act and the court's findings were adequately supported by the record. Id. § 40-35-210 (2003), Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169.

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

The trial court determined that the defendant qualified as a Range II, multiple offender based upon his history of criminal convictions. The defendant argues that this violates Blakely. We disagree. To be sentenced as a Range II, multiple offender the defendant must have been previously convicted of "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes." Tenn. Code Ann. § 40-35-106(a)(1). The defendant's criminal history contains felony convictions for two robberies, aggravated burglary, burglary, automobile burglary, witness coercion and felony escape. Any of these convictions except for the automobile burglary and felony escape, both Class E felonies, qualify to establish the defendant as a Range II, multiple offender. As this court has previously noted, "the United States Supreme Court has exempted proof of a defendant's prior convictions from the requirement that facts used to enhance a defendant's sentence be found by a jury beyond a reasonable doubt." State v. Mohamed Medhet Karim, 2007 WL 1435390, M2006-00619-CCA-R3-CD, at *5 (Tenn. Crim. App. May 16, 2007)(citing Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63 (2000)). Therefore, we conclude that the defendant was properly classified as a Range II, multiple offender.

In arriving at the appropriate length of the defendant's sentence, the trial court found the following enhancement factors applicable:

> (2) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
> (3) The defendant was the leader in the commission of an offense involving two or more criminal actors;
> (7) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from the victim is particularly great;
> (9) The defendant before trial or sentencing failed to comply with the conditions of a sentence involving release into the community; and
> (15) The defendant abused a position of public or private trust or used a professional license in a manner that significantly facilitated the commission or fulfillment of the offense.

Tenn. Code Ann. § 40-35-114(2), (3), (7), (9) and (15) (2003). Based upon these enhancement factors and the absence of mitigating factors, the court sentenced the defendant to the maximum sentence of twenty years.

We note initially that the sentencing hearing in this case was held on May 26, 2006. At that time, the trial court relied upon our supreme court's holding in State v. Gomez, 163 S.W.3d 632 (Tenn. 2005), that ruled Blakely inapplicable to our sentencing statute. However, Blakely's application to Tennessee's sentencing statute has since been clarified by the United States Supreme Court's release of Cunningham v. California, 127 S. Ct. 856 (2007), and the subsequent grant of certiorari vacating our supreme court's judgment in Gomez v. Tennessee, 127 S. Ct. 1209 (2007).[2] However, we need not address the propriety of the trial court's application of the enhancement factors pursuant to Blakely if there are appropriate factors sufficient to justify the trial court's imposition of sentence. See Karim, at *4. As previously stated, Apprendi and its progeny of Blakely and Cunningham specifically exempted from the requirement of a jury finding those facts regarding a defendant's criminal convictions that are used to increase a sentence. Therefore, regardless of any effect Blakely may have on the application of enhancement factors (3), (7), (9) and (15), we shall examine the trial court's application of enhancement factor (2) which is not implicated by Blakely.

The trial court placed great significance on the defendant's history of criminal convictions when stating that "[i]t's not just two or three driving offenses or two or three shopliftings. He has a string of criminal convictions over the years. He spent a significant amount of time in the penitentiary." The trial court also found the absence of any mitigating factors. We agree with the trial court that the evidence regarding factor (2) is substantial. Therefore, we conclude that this factor alone justifies the imposition of the twenty-year maximum sentence in this case.

## CONCLUSION

Having concluded that none of the alleged errors appealed by the defendant merit relief, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

---

[2] Defense counsel discussed the United State Supreme Court's grant of certiorari in Cunningham in its argument to the trial court that Blakely applies to our sentencing scheme arguing that "[t]hat seems to be an indication that [the Supreme Court] want[s] to say , oh, yes [i]t does apply, but nonetheless, I do recognize right now [Blakely is inapplicable] . . . and if they reverse Cunningham, they'll probably remand Gomez to reconsider in light of Cunningham."