IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2018

STATE OF TENNESSEE v. MATTHEW P. LADEWIG

Appeal from the Circuit Court for Madison County
No. 17-55     Donald H. Allen, Judge

No. W2017-02100-CCA-R3-CD

The Defendant, Matthew P. Ladewig, appeals as of right from the Madison County Circuit Court's judgment of conviction of theft over $500. On appeal, the Defendant contends that the trial court abused its discretion in denying his motion for mistrial after a witness for the prosecution, while testifying, referred to the Defendant's possible involvement in a similar investigation. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALLEN E. GLENN, JR., and CAMILLE R. MCMULLEN, JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant District Public Defender, for the appellant, Matthew P. Ladewig.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Jody S. Pickens, District Attorney General; and Brian M. Gilliam and Matthew F. Floyd, Assistant District Attorneys General, for the appellee, State of Tennessee.

OPINION

FACTUAL BACKGROUND

The Madison County Grand Jury indicted the Defendant for theft over $500, and he pled not guilty. The prosecution filed a notice of intent to seek enhanced punishment because the Defendant had a history of prior offenses, including a previous guilty plea to a charge of property theft valued between $10,000 and $60,000 in March 2013.

At trial, Donald Duckworth testified that when he returned home from work "about 7:30 or 8:00" on the evening of August 23, 2016, he discovered that someone had removed a flatbed trailer, a jack, and three tires, which he valued at "about $500," "about 100-something dollars," and "about 100 bucks," respectively. Mr. Duckworth stated that all the items were on his property when he left for work earlier that morning, so upon noticing their absence, he went and checked the footage from his home's video surveillance system. Upon reviewing the recording, Mr. Duckworth recognized the vehicle towing away the flatbed trailer as belonging to the Defendant. Mr. Duckworth testified that it had been "a few months" since the Defendant, whom he knew only by first name, had visited his property, but that he recognized the Defendant's green Ford Explorer. The witness did not provide any further information about why the Defendant came to his home in the past. Mr. Duckworth stated that he was unaware of why the Defendant would have been on his property on the day in question and that he had not given him any such permission. Mr. Duckworth testified that he called the sheriff's department the following morning on August 24, 2016, but Deputy Ronald W. Try, who reported to the scene, testified that he responded to a call made on August 29, 2016.[1]

After arriving at Mr. Duckworth's home, Deputy Try viewed the videotape on Mr. Duckworth's surveillance system and took several screenshots on his department issued cell phone of the green Ford Explorer and two occupants driving off the property with the trailer in-tow. The prosecution later entered the three photographs into evidence as Exhibits 1, 2, and 3 at trial; however, the images were unclear and insufficient to provide an accurate identification of the second person with the Defendant. No one ever identified the missing jack or tires as having appeared in the surveillance video or accompanying screenshots. Deputy Try testified that he took the photographs for the detectives to have something to review until they received a copy of the surveillance recording. The deputy testified that at the time, it was his understanding that Mr. Duckworth would retain the footage for future use; however, he could not recall whether he specifically advised Mr. Duckworth to keep the recording or not. The surveillance cameras recorded over the video, however, before investigators acquired a copy, as was routine for Mr. Duckworth's system to do every few days.

Sergeant Alfonzo Newbern of the property crimes investigations unit of the Madison County Sheriff's Department began investigating the next day after receiving Deputy Try's report. Sergeant Newbern began by interviewing Mr. Duckworth about the stolen property and testified that he did not need the actual recording because the screenshots of the suspect's vehicle and the trailer were sufficient for the investigation.

---

[1] The Affidavit of Complaint attached to the Defendant's arrest warrant noted that deputies spoke to Mr. Duckworth on August 23, 2016.

While testifying at trial, Sergeant Newbern responded to the prosecution's question of "Once you had spoken to Mr. Duckworth and received those pictures you said that you then began your investigation. What did you do next?" by making the following statement:

> The only thing I had was Mr. Duckworth knew Mr. Ladewig as Matt and we had another incident that happened where a trailer came up missing where there was a Matthew Ladewig involved.

At this, the defense immediately moved for a mistrial on the grounds that the witness made a second never aforementioned allegation and that the jury's hearing such a statement was extremely prejudicial. The trial court took the motion under advisement and gave the following instruction to the jury:

> Ladies and gentlemen, I'm going to ask you to disregard that last statement made by the witness. Just disregard that. You will not consider that as evidence in this case.

Sergeant Newbern's testimony resumed and he continued detailing his investigation.

The Sergeant stated that because he had already formulated Mr. Ladewig as a suspect, he traveled to the Defendant's address where he matched the vehicle from the surveillance screenshots to one parked at the residence. Sergeant Newbern arrested and subsequently questioned the Defendant on September 6, 2016. The Defendant signed a waiver of his Miranda rights and admitted to the investigators that he did remove a trailer from Mr. Duckworth's property, positively identifying himself and his truck in the screenshots of the surveillance video. The Defendant explained to Sergeant Newbern that the trailer he took actually belonged to James Russell.

Sergeant Newbern visited the Russell residence on September 7, 2016, to confirm the Defendant's story, but testified that the trailer at the Russell's house did not match the "rusty" description that Mr. Duckworth provided investigators of his missing trailer. The trial court entered a picture of the trailer at the Russell's residence into evidence as Exhibit 5. The Sergeant explained that when investigators do not have a serial number or identifying information related to missing property, "we'll always call the victim and get a description just to make sure." Sergeant Newbern called Mr. Duckworth while looking at the trailer located at the Russell's home, and upon hearing the description from Sergeant Newbern, Mr. Duckworth rejected the trailer as his own. Sergeant Newbern testified that the trailer on the Russell's property was a "different color," "wasn't quite the length," and "didn't match the description at all of [Mr. Duckworth's] trailer." Investigators never found a trailer matching Mr. Duckworth's description.

-3-

After the State finished putting on evidence, defense counsel requested that the court formally rule on the motion for mistrial. The trial court denied the motion, noting that the prosecution's line of questioning had not elicited the statement, nothing Sergeant Newbern said was overly prejudicial since there was no dispute that the Defendant took a trailer from Mr. Duckworth's property, and the court had instructed the jury to disregard the Sergeant's statement. Specifically, the trial court held:

> I know the officer did indicate he began his investigation and he was looking into another incident and made some statement about some item being taken, but… there is no question that the defendant took a trailer from the property…. [W]hether or not this is a trailer belonging to Mr. Duckworth or as stated by the Defendant's statement a trailer belonging to Mr. Russell… that's really the issue it comes down to…. I don't think there was anything that Sergeant Newbern said that was overly prejudicial. Again, he said he was trying to develop a suspect, I guess identify the last name of the person that he perhaps suspected of committing this theft…. [W]hat was said was said, but…I instructed the jury to disregard that statement…. I'm going to deny the motion for a mistrial.

It is undisputed that during mid-morning hours of August 23, 2016, the Defendant, Matthew Ladewig, and Jacob Russell entered Donald Duckworth's property at 113 Bond Cemetery Road in Denmark, Tennessee while Mr. Duckworth was not home and without his permission. Jacob Russell stated that they initially tried to knock on the door of the home to alert anyone that might be home, and the Defendant said that he failed to make contact with Mr. Duckworth after attempting several calls and text messages. The Defendant and Mr. Russell then proceeded to remove a flatbed trailer from Mr. Duckworth's backyard by towing it away behind the Defendant's car. The Defendant and Mr. Russell both testified that the trailer that they removed from Mr. Duckworth's property actually belonged to Mr. Russell's father, James Russell, and that they retrieved it after having borrowed it with his permission on August 19, 2016.

The Defendant testified that he had spent the previous "three or four days" working for Mr. Duckworth on his property, using the trailer he borrowed from James Russell to remove a motor out of an Oldsmobile and tow a truck for Mr. Duckworth. The Defendant explained that the reason for his delay in returning the truck to Mr. Russell was that while towing Mr. Duckworth's truck, "the wheel folded" and broke a board on the trailer causing the truck to become stuck until he managed to free it on August 22, 2016. The Defendant then stated that he placed the trailer behind Mr. Duckworth's house "so nobody could get it until [he] got back the next day to finish up [his] work." The Defendant testified that Mr. Duckworth knew that he planned to return for the trailer the next day because they spoke that evening, and Mr. Duckworth told him that he would

-4-

finish paying him the next morning once the Defendant completed removing the Oldsmobile's motor. The Defendant contends, however, that because he failed to make contact with Mr. Duckworth on the following morning and did not receive the remainder of his payment, he left with the trailer without first removing the car's motor. Jacob Russell and the Defendant both testified that James Russell's patience for waiting on the return of his flatbed trailer had nearly "run out," as he had already threatened his son with punishment and the Defendant with calling the police if the trailer was not back by the time he finished driving his school bus route that morning. James Russell was unavailable to testify at trial due to a conflict with his work for the military. The Defendant testified that he never saw another trailer on Mr. Duckworth's property and had "no knowledge" of the missing jack and tires.

The jury found the Defendant guilty as charged on July 26, 2017, and the trial court later sentenced him to serve two years' imprisonment with a fine of $600. The Defendant filed a motion for new trial that the trial court denied on October 12, 2017. The Defendant then filed a timely notice of this appeal.

## ANALYSIS

The Defendant asserts that the trial court erred by denying his motion for mistrial after Sergeant Newbern testified that the Defendant was a suspect in another trailer theft. The Defendant contends that a mistrial was necessary because Sergeant Newbern's statement, as an inadmissible statement under Rule 404(b) of the Tennessee Rules of Evidence, destroyed any chance for an impartial jury verdict despite the court's curative instruction. The State responds that the trial court properly exercised its discretion because the State did not elicit this information, the trial court chose to give a curative instruction, and the Defendant failed to demonstrate on appeal how a mistrial was a "manifest necessity" under the circumstances.

The purpose of declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). For a mistrial to be declared, there must be a "manifest necessity" that requires such action. State v. Robinson, 146 S.W.3d 469, 494 (Tenn. 2004); State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). A mistrial is only appropriate when the trial cannot continue without causing a miscarriage of justice. State v. Land, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000); see State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). The decision to grant a mistrial is within the sound discretion of the trial court. State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). The burden to show the necessity for a mistrial falls upon the party seeking the mistrial. Land, 34 S.W.3d at 527. This court will not disturb the trial court's decision unless there is an abuse of discretion.

State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990). In evaluating whether the trial court abused its discretion we may consider: "(1) whether the State elicited the testimony, (2) whether the trial court gave a curative instruction, and (3) the relative strength or weakness of the State's proof." State v. Welcome, 280 S.W.3d 215, 222 (Tenn. Crim. App. 2007).

In applying these factors to the present case, we first note that the State did not elicit the testimony from Sergeant Newbern. Rather, the Sergeant volunteered the reference to a second trailer theft allegation in response to the question of what he did next to begin his investigation after speaking with Mr. Duckworth.

Secondly, the trial court instructed the jury to "disregard" Sergeant Newbern's statement and "not consider that as evidence in this case," which the jury is presumed to follow. Robinson, 146 S.W.3d at 494. Although worrisome that the second allegation raised by Sergeant Newbern essentially mirrored the charge against the Defendant, this court previously noted, "One court has previously allowed a nine-year-old armed robbery impeaching conviction to be used during an armed robbery trial of the defendant, even though the crimes were substantially the same because the trial court's limiting instruction 'provided an adequate safeguard against any potential prejudice possibly engendered by the admission of a prior conviction.'" State v. Lankford, 298 S.W.3d 176, 182 (Tenn. Crim. App. 2008) (quoting United States v. Moore, 917 F.2d 215, 234-35 (6th Cir. 1990)); see also State v. Racris Thomas, No. W2013-00851-CCA-R3-CD, 2014 WL 5465864 (Tenn. Crim. App., Oct. 27, 2014). Here, the court must presume that the jury abided by the trial court's instruction and ignored Sergeant Newbern's statement for the purposes of deliberations despite the near equivalence of the allegation to the Defendant's charge.

Lastly, the State's case is reasonably strong. The Defendant admitted to removing the trailer from Mr. Duckworth's property, and there was evidence on-camera of his towing the trailer away with his car. Mr. Duckworth refuted that the Defendant was on his property for the previous "three or four days" working. Further, Sergeant Newbern spoke with Mr. Duckworth while viewing the trailer on Mr. Russell's property and determined that they were not the same, being different in color and length. The jury chose not to accept the Defendant's version of events, believing instead that the trailer taken by the Defendant belonged to Mr. Duckworth. There is sufficient evidence to support the jury reaching this verdict. Additionally, the Defendant never established the "manifest necessity" required for a mistrial. See State v. Smith, 893 S.W.2d 908, 923 (Tenn. 1995) (finding that the trial court properly denied a mistrial based on a witness's improper statement because the statement was unsolicited and followed by a curative instruction). We hold that these considerations weigh against the Defendant's argument that a mistrial is necessary to avoid a miscarriage of justice. Therefore, we conclude that

the trial court properly exercised its discretion by denying the Defendant's motion for mistrial.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE