IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 10, 2024 Session

**STATE OF TENNESSEE v. JIMMY UHL**

**Appeal from the Circuit Court for Dickson County**
**No. 2018-CR-234     David D. Wolfe, Judge**

---

**No. M2023-01687-CCA-R3-CD**

---

A Dickson County jury convicted the Defendant, Jimmy Uhl, of aggravated sexual battery, and the trial court sentenced him to twelve years of incarceration. On appeal, the Defendant contends that the trial court erred when it denied his motion for a mistrial and when it sentenced him. Following our review, we affirm the trial court's judgment. We remand to the trial court to make the requisite findings with respect to the fine imposed by the jury.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ROBERT L. HOLLOWAY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

William W. Gill, Assistant District Public Defender-Appellate Division, Franklin, Tennessee (on appeal), Matthew T. Mitchell and William B. Lockert, District Public Defenders, Ashland City, Tennessee (at trial), for the appellant, Jimmy Uhl.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Ray Crouch, District Attorney General; Stanley Brooks and Talmage M. Woodall, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

This case arises from the Defendant having sexual contact with the victim, his eleven-year-old daughter. On multiple occasions, the Defendant touched the victim on her breasts and vagina. A separate incident occurred where the Defendant sodomized the victim. For these offenses, a Dickson County Grand Jury indicted the Defendant for three counts of aggravated sexual battery, one count of rape of a child, and one count of incest.

The following evidence was presented at the Defendant's trial on these charges: The victim testified that she was seventeen years old at the time of trial and that she was eleven or twelve years old at the time of the offenses in 2017. The victim stated that she was homeschooled and had numerous brothers and sisters. She identified the Defendant as her father. At the end of 2017, the victim, the Defendant, and the rest of the family were staying at the victim's grandparents' house. The first incident occurred there, when the victim was sleeping at her grandparents' house in her parents' room. She was asleep on the floor and woke up to the Defendant's hand in her shirt underneath her bra on her chest. The second incident occurred at her parents' house when the victim was asleep in the living room. The Defendant put his hand inside the victim's pants and touched her vagina beneath her underwear. The third incident occurred when the victim's best friend was visiting, and they were sitting in the living room under a blanket. The Defendant put his hand on her vagina, but the victim could not remember if this contact was over or underneath her clothing. The final incident occurred when the victim accompanied the Defendant to work. They were making a delivery when the Defendant pulled over on the side of the road and walked into the woods with the victim. She recalled that his pant leg got stuck on a fence. Then he "sat [her] on a log and then he started putting his penis in [her] butt."

Denise Alexander testified that she was employed as a social worker at Our Kids Center and met with the victim in this case on February 11, 2018. The victim told Ms. Alexander that she was afraid of the Defendant and that, since her accusations against him, the victim felt that he had been coming to their house and peering in their windows. The victim told Ms. Alexander that the Defendant did "bad things" like touching her inappropriately on her "front private part" and her bottom. The victim told her, "he put it in my butt," and described penile anal contact and penetration. The victim reported that she bled from her anus after the event and was in pain. The victim denied that the Defendant had her touch him in any way.

On cross-examination, Ms. Alexander testified that the victim's description of the events was detailed and indicated that she had not been coached by another individual to make a false statement.

Lori Luttrull testified that she was employed as a nurse practitioner at Our Kids Center and performed a forensic medical exam on the victim on February 13, 2018. The victim complained of bleeding in her rectum and had a small fissure at the opening of her anus.

The victim's mother testified that she had been married to the Defendant for eighteen years and that they were separated at the time of trial. They shared two children together. Towards the end of 2017, during her Christmas break from school, the Defendant took the victim to work with him a few times. This continued into January of 2018. The Defendant had not taken the victim to work with him before that time. The victim's mother recalled that the Defendant did not spend much time with the victim and that, over the

2

2017-18 Christmas break, the Defendant's time spent with the victim went from "absolutely nothing" to "every second of the day." The first week of January of 2018, when the family left the grandparents' house, the victim disclosed to her mother that inappropriate touching had occurred. The Defendant began calling the victim's mother repeatedly, asking about the victim, and the victim explained to her mother why the Defendant was calling. The victim disclosed the incidents piecemeal over the next couple of days, and the victim's mother contacted law enforcement.

On cross-examination, the victim's mother agreed that the victim told her about the first incident when the victim was asleep on the floor. The victim's mother was "in shock" and asked the Defendant about it. The Defendant gave her a "totally different explanation," including that the victim ended up in their bed and that the Defendant rolled over and thought it was the victim's mother he was touching. The victim's mother was asked about a prior interview with the victim where the victim alluded to her brother touching her. Answering questions about the victim's interview, the victim's mother said, "I had to take them to the CAC over one of [the Defendant's] daughters saying something about him." At this point, the Defendant objected and requested a jury-out hearing during, which he moved for a mistrial. Counsel for the Defendant argued that the victim's mother "should have known not to say something about other allegations against [the Defendant]," indicating to the jury that other children had made allegations against the Defendant. The trial court reserved a ruling on the motion for mistrial pending a full hearing.

At the hearing on the motion, the trial court stated that it would deny the motion for mistrial, finding that there had been limited discussion, if any, about the "CAC," the Child Advocacy Center, to lead the jury to know what "CAC" stood for. The trial court found that the victim's mother's testimony was not "specific" in a manner to indicate to the jury that other victims had made accusations against the Defendant. The trial court concluded that it would provide a curative instruction to the jury to disregard the victim's mother's last answer as non-responsive.

Detective Jeff Lovell testified that he was employed with the Dickson County Sheriff's Office and investigated the victim's complaint against the Defendant. In so doing, he interviewed the Defendant, the victim's mother, the Defendant's employer, and a friend of the victim's. In his interview, the Defendant admitted to Detective Lovell that he had put his hand on the victim's breast but that he had done so while asleep, believing that it was his wife he was touching. He denied all other incidents alleged by the victim.

Based on this evidence, the jury convicted the Defendant of one count of aggravated sexual battery. The jury acquitted the Defendant of the remaining two counts of aggravated sexual battery. The trial court granted the Defendant's motion to dismiss pertaining to the rape of a child and incest charges.

The trial court held a sentencing hearing, wherein the State introduced the presentence report. The victim read an impact statement into the record detailing the trauma and pain she had suffered because of the Defendant's actions. The Defendant's brother testified that the Defendant had called him from prison and requested that he make a fake Facebook account in the victim's name for the purpose of showing that the victim was a liar. The Defendant's brother stated that the Defendant had discussed sending messages from the victim's fake profile to indicate that she had lied to get the Defendant "in trouble." The Defendant's brother was subsequently charged with tampering with evidence. At the conclusion of the evidence, the trial court made the following findings:

> The Court is required to follow the state statutes regarding the sentencing that's to be imposed and those are set forth in the Tennessee Code [Annotated] section 40-35-103 which are the sentencing considerations. And for the record so that there's no question about my considering and following all of those considerations, I want to go through them.
>
> . . . .
>
> So going then to having found that the [D]efendant is a range one offender for a [C]lass B felony that[] he's been convicted, Mr. Brooks correctly states that the range of punishment that I'm considering is a minimum of eight years and a maximum of twelve. And obviously these two parties, both sides have advocated their position. The Defense is asking for the minimum, the State is asking for the maximum. In order then to determine that I will look to what I believe to be the findings regarding mitigating and enhancing factors. I'll start with the enhancement factors. The State refers to factor number one set out in the code which is the defendant has a previous history of criminal behavior in addition to those necessary to establish the appropriate range. As I stated, the [D]efendant has a prior criminal record, a prior criminal conviction, a violation of an Order of Protection. It is a misdemeanor, but it is also significant because of the fact that it reflects that the [D]efendant was placed under a Court Order and failed to adhere to that Court Order. And albeit a misdemeanor, it also reflects his likely not complying with Orders of the Court.
>
> . . . .
>
> [I]it's this Court's opinion that the evidence of the fact that this [D]efendant clearly intended to present false evidence to this Court, an obstruction of justice in this proceeding, that he is guilty by a preponderance of the evidence at least, the Court finds that the State has proven by a preponderance of the evidence that the conduct of the [D]efendant that he solicited his brother to present false evidence, to manufacture and present false evidence, and that

4

there are a number of criminal statutes that would have applied, that it clearly would also be tampering with evidence in a criminal case. It occurred after conviction, but before the sentencing. So I find it to be prior criminal history or history of criminal behavior, previous criminal behavior that would apply under rule one or factor one. I would also state that that is not the only factor that I am relying upon, it is merely a consideration and observation. I place greater weight upon the following factors. Number four, the victim of the offense was particularly vulnerable because of age. Yes, it is a factor that the Court finds it was a statutory offense that basically said that he was convicted of sexual battery of a child under thirteen years of age. That's the nature of the child. So that does -- that is a part of the consideration. So number four cannot be considered as a factor for enhancement in this Court's opinion because it is a part of the crime itself.

I think factor six does apply, the personal injuries inflicted upon the victim were particularly great. This Court has presided over this case for a couple of years during this time. I have observed [] the victim in this case, come into Court on numerous occasion[s]. I have observed the emotional trauma that this case has imposed upon her having to come into Court and testify on multiple occasions. On motion hearings and at trial. And it is clear from my observations of her that she has suffered an irreversible, I hope not irreversible, but an undisputable psychological and emotional injury as a result of this. I think it is not necessarily a physical injury that she suffered, but it certainly is an emotional injury. The proof before me is that she is undergoing therapy and has been for years, and that's consistent with the testimony at trial. . . . Factor seven, the offense involving the victim was committed to gratify the [D]efendant's desire for pleasure or excitement. Clearly that applies to this case. I do not believe that the [D]efendant, you know, his story about that he just accidentally woke up and had his hand on his daughter's breast and thought it was his wife is not in my opinion a credible explanation, period. I think it was clearly these things, according to her testimony, the victim, that it was done to gratify his desire for sexual pleasure or excitement. And factor 14, the [D]efendant abused a position of public or private trust in a manner that significantly facilitated a condition or fulfillment of the offense. I don't think that's a factor requires that there be proof that because he was a parent he called her to the bed or anything else. He was her father. There's no greater obligation that a person can have than as a parent to protect your child. To protect your child from these types of things happening. To have a father who willingly and intentionally abused that position of trust and used that position to obtain his own sexual gratification is one of the worst things that a person can do, and I find that that is a major factor that deserves great weight. . . . Based upon that, it is this Court's opinion based upon the four enhancing factors that his sentence

5

should be twelve years in the Tennessee Department of Corrections to be served. That is the Judgment. He will be ordered to pay a $25,000.00 fine, and he will be on the Sex Offender Registry for lifetime, and he will also be under community supervision for life.

It is from this judgment that the Defendant now appeals.

## II. Analysis

Initially, we address the timeliness of the Defendant's appeal. A final judgment was entered by the trial court on July 17, 2023, and the Defendant filed a motion for new trial on August 24, 2023, eight days after the thirty-day period expired. Tenn. R. Crim. P. 33(b) and 45(b) (a motion for new trial "shall" be filed within thirty days of the entry of the sentence and this provision is mandatory). A trial judge does not have jurisdiction to hear and determine the merits of a motion for a new trial which has not been timely filed. The trial judge has no alternative but to dismiss the motion. *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989) (footnotes omitted); *State v. Lowe-Kelley*, 380 S.W.3d 30, 34 (Tenn. 2012) ("A trial court cannot rule on the merits of a late-filed motion for new trial because the judgment has become final, and the trial court no longer has jurisdiction over the case."). Pursuant to Tennessee Rule of Appellate Procedure 4(a), the notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from.'" *State v. James*, No. E2021-00559-CCA-R3-CD, 2022 WL 633540, at *1 (Tenn. Crim. App. Mar. 4, 2022), *no perm. app. filed*. The law has long recognized that '[a]n untimely filed motion for new trial is a nullity and will not toll the thirty-day time period for filing a notice of appeal.'" *State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *2 (Tenn. Crim. App. Nov. 9, 2023) (citing *State v. Bumpas*, No. M2017-00746-CCA-R3-CD, 2018 WL 817289, at *5 (Tenn. Crim. App. Feb. 12, 2018), *perm. app. denied* (Tenn. Apr. 16, 2020)), *no perm. app. filed*.

The Defendant's motion for new trial was filed eight days after the deadline, making his subsequent notice of appeal untimely. When considering whether a waiver on an untimely notice of appeal is appropriate, "this [C]ourt will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). "Other relevant factors may include the merits of the appeal." *State v. Murray*, No. M2020-00168-CCA-R3-CD, 2021 WL 2156932, at *3 (Tenn. Crim. App. May 27, 2021), *no perm. app. filed*. The appealing party "bears the responsibility to properly perfect his [or her] appeal or to demonstrate that the 'interests of justice' merit waiver of an untimely filed notice of appeal." *State v. Thomas*, No. W2022-00109-CCA-R3-CD, 2023 WL 328337, at *3 (Tenn. Crim. App. Jan. 20, 2023), *perm. app. denied* (Tenn. June 7, 2023); Tenn. R. App. P. 4(a).

Anticipating this, in a motion asking this court to waive the timely filing requirement for his notice of appeal, the Defendant acknowledged the nullity created by his late filing and requested, in the interest of justice, plain error review with the exception of sentencing. The State contends that if we determine the Defendant has not waived his appeal, we are to review his issue regarding the motion for mistrial for plain error and the Defendant is not entitled to relief.

We conclude that the delay in the filing was minimal and that, in the interest of justice, it is necessary to review the Defendant's issues.

## A. Motion for Mistrial

On appeal, the Defendant contends that the trial court erred when it denied his motion for a mistrial after the victim's mother testified inadmissibly about a prior allegation against the Defendant, which he claims was highly prejudicial. He acknowledges that his motion for new trial was untimely filed and requests plain error review. The State argues that the trial court did not commit plain error when it denied his motion. We agree with the State.

The doctrine of plain error applies when all five of the following factors have been established:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused must not have waived the issue for tactical reasons; and
(e) consideration of the error must be "necessary to do substantial justice."

*State v. Page*, 184 S.W.3d 223, 230-31 (Tenn. 2006) (quoting *State v. Terry*, 118 S.W.3d 355, 360 (Tenn. 2003)) (internal brackets omitted). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Id.* at 231.

We conclude that a clear and unequivocal rule of law was not breached, that a substantial right of the Defendant was not adversely affected, and that consideration of the error is not necessary to do substantial justice in this case. Regarding a trial court's decision to declare a mistrial, this court will not interfere with a trial court's exercise of its discretion regarding whether to grant a motion for mistrial "absent a clear abuse of discretion on the record." *State v. Hansard*, No. E2021-01380-CCA-R3-CD, 2022 WL 17574357, at *4 (Tenn. Crim. App. Dec. 12, 2022) (quoting *State v. Bell*, 512 S.W.3d 167, 187 (Tenn. 2015)), *perm. app. denied* (Tenn. Apr. 17, 2023). A mistrial is appropriate only when there is a manifest necessity, meaning "a trial cannot continue, or a miscarriage of justice would result if it did." *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000); *State v.*

7

*Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). The party requesting a mistrial carries the burden of establishing its necessity. *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008).

There is not an "'exacting standard' for determining when a mistrial is necessary after a witness has injected improper testimony." *State v. Horn*, No. E2015-00715-CCA-R3-CD, 2016 WL 561181, at *7 (Tenn. Crim. App. Feb. 12, 2016), *no perm. app. filed*. However, in *State v. Welcome*, 280 S.W.3d 215 (Tenn. Crim. App. 2007), this court identified three factors that should be considered in determining whether the trial court abused its discretion in denying a mistrial: "(1) whether the State elicited the testimony, (2) whether the trial court gave a curative instruction, and (3) the relative strength or weakness of the State's proof." *Id.* at 222 (citation omitted); *see also State v. Nash*, 294 S.W.3d 541, 547 (Tenn. 2009) (considering same factors in the context of inappropriate testimony).

The following exchange occurred during the victim's mother's testimony on direct examination:

> State: You say she may have finally said [the brother] did something, but you think that's because they just wore her down until she would say?
>
> Victim's mother: 20 or 30 minutes through when they asked did anybody touch you or did anybody do this.
>
> State: Well, did –
>
> Victim's mother: Yes, because I had to take them to the CAC for a whole interview over one of [the Defendant's] daughters saying something about him.

At this point, the trial court stopped the testimony and excused the jury. In a jury-out hearing, the Defendant moved for a mistrial. The State responded that the testimony was vague and likely unclear to the jury that it was in reference to another allegation. The State suggested a curative instruction to the jury and that the trial court took the matter under advisement. The following day, the trial court heard further arguments and concluded that the State had not elicited the victim's testimony, finding her inadmissible answer to be "nonresponsive" to the question posed to her. The trial court gave a curative instruction to the jury.

Reviewing the *Welcome* factors in turn, the first factor examines whether the State elicited the testimony. *Welcome*, 280 S.W.3d at 222. The State is not deemed to have elicited improper testimony when a witness's answer is either volunteered, unsolicited, or unresponsive to the question asked. *E.g., State v. Dotson*, No. E2019-01614-CCA-R3-CD, 2021 WL 3161218, at *25 (Tenn. Crim. App. July 27, 2021), *perm. app. denied* (Tenn.

Dec. 9, 2021). In our view, the State did not deliberately elicit the improper testimony from the victim's mother about prior allegations of abuse. As such, the first *Welcome* factor does not weigh in favor of a mistrial. The second *Welcome* factor looks to "whether the trial court gave a curative instruction." *Welcome*, 280 S.W.3d at 222. The trial court gave a proper curative instruction to the jury, and this supports its decision to deny a mistrial. Finally, the third *Welcome* factor examines "the relative strength or weakness of the State's proof." *Welcome*, 280 S.W.3d at 222. The weight of the evidence here is significant. The State's proof included multiple consistent and credible disclosures by the victim and pictures of the victim's injuries. As such, we conclude that the third *Welcome* factor also weighs in favor of denying a mistrial.

Accordingly, we cannot conclude that a clear and unequivocal rule of law has been breached. "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Page*, at 231. The trial court did not abuse its discretion in denying Defendant's motion for a mistrial. The Defendant is not entitled to relief.

## B. Sentencing

The Defendant contends that the trial court erred when it sentenced him. He contends that the trial court incorrectly enhanced his sentence and ordered a fine without making the requisite finding of his ability to pay. The State concedes that the trial court misapplied an enhancement factor but responds that, considering three other enhancement factors were properly applied, the trial court properly sentenced the Defendant. We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case." *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

The misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from a trial court's sentencing decision. *Id.* A reviewing court should not invalidate a sentence on this basis unless the trial court wholly departed from the principles of the Sentencing Act. *Id.* So long as there are other reasons consistent with the purpose and principles of sentencing, a sentence within the appropriate range should be upheld. *Id.*

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2019).

Both parties agree that the trial court misapplied enhancement factor (7), that the Defendant committed the crime for his sexual gratification. This factor is not properly applied because "sexual contact," an element of the offense of aggravated sexual battery, is defined as sexual touching for the purposes of sexual gratification. T.C.A. § 39-13-504(a); *State v. Kissinger*, 922 S.W.2d 483, 489-90 (Tenn. 1996). However, as we have stated, the misapplication of a single enhancement factor does not invalidate a sentence if other enhancement factors were properly applied and if the trial court imposed a sentence true to the principles of sentencing. On this basis, we conclude that the trial court properly sentenced the Defendant. The trial court carefully considered the relevant principles and sentenced the Defendant to within range sentences for of his crimes. The trial court applied enhancement factor (6), that the victim's emotional and psychological injuries were particularly great, based on the evidence that the victim had undergone extensive counseling as a result of the abuse. § 40-35-114(6). The trial court applied enhancement factor (14), that the Defendant abused a position of trust as he was the victim's father and occasional caregiver. T.C.A. § 40-35-114(14). All the factors were supported by the evidence presented at the sentencing hearing and contained in the presentence report. As such, the appropriate application of enhancement factors supports the trial court's sentencing decision. The Defendant is not entitled to relief as to this issue.

Turning to the Defendant's contention that the trial court erred when it failed to hold a hearing on the $25,000 fine, imposed by the jury as part of the Defendant's sentence, the State contends, and we agree, that the matter should be remanded to the trial court for a

sentencing hearing on the required considerations of the jury's fine. When a criminal offense is punishable by a fine in excess of $50.00, the jury is responsible for setting a fine, if any, within the ranges provided by the legislature. T.C.A. § 40-35-301(b). "When imposing sentence, after the sentencing hearing, the [trial] court shall impose a fine, if any, not to exceed the fine fixed by the jury." *Id.* However, "the trial court may not simply impose the fine as fixed by the jury." *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997). Rather, the trial court's imposition of a fine must be based upon the factors provided in the statutory sentencing act, including the defendant's ability to pay that fine, as well as the defendant's prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors. *State v. Taylor*, 70 S.W.3d 717, 723 (Tenn. 2002) (citing *Blevins*, 968 S.W.2d at 895).

Where the trial court fails to place on the record any reason for a particular sentencing decision, the most appropriate action is to remand the case to the trial court for reconsideration. *See Bise*, 380 S.W.3d at 705, n.41. Therefore, we reverse the trial court's imposition of the fines and remand for further findings based upon consideration of the relevant factors.

### III. Conclusion

In accordance with the foregoing, we affirm the judgment of the trial court. We remand the case to the trial court for a hearing on the appropriate factors relevant to the imposition of a fine.

_____
ROBERT W. WEDEMEYER, JUDGE